IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM GRANVILLE SMITH, | No. 2:14-CV-0775-KJM-CMK-P |
| Plaintiff, | |
| vs. | FINDINGS AND RECOMMENDATIONS |
| B. AUBUCHON, et al., | |
| Defendants. | |

Plaintiff, a prisoner proceeding pro se, brings this civil rights action pursuant to 42 U.S.C. § 1983. Pending before the court is defendants' motion to dismiss (Doc. 28).

## I. PLAINTIFF'S ALLEGATIONS

This action proceeds on plaintiff's first amended complaint. Attached to the amended complaint and incorporated by reference is a "Supplemental Report" prepared by defendant James, a police officer with the Sacramento County Sheriff's Department. The report states:

> 1432 Hrs, 1-4-2011, I, Officer M. James . . . was on patrol when a dispatch call of an armed bank robbery was dispatched from the First Bank located at 2880 Sunrise Bl.

1

| | |
|---|---|
| 1 | I asked dispatch for the nearest cross street and advised I would be checking the area.  Dispatch advised the suspect was a black male adult wearing a gray suit with stripes and armed with a large handgun. |
| 2 | |
| 3 | I check the businesses in the surrounding area north of the bank.  An officer advised radio dispatch to contract the RT light rail and have them check their cameras.  At that time, I drove to the corner of Sunrise Gold Center and Sunrise Bl. and noticed what appeared to be a black male adult, later identified as S-1 William GRANVILLE, standing inside the business at the time.  I saw GRANVILLE was wearing an oversize coat and hair pulled back in a pony tail.  As I drove north in Sunrise Bl. I also saw a bicycle laying down in front of the business. |
| 4 | |
| 5 | |
| 6 | |
| 7 | |
| 8 | I then rode to the RT light rail station to check for the person matching the description.  I did not see anyone matching that description.  At that time, Officer Aubuchon . . . met up with me and I relayed to him the information regarding the subject inside the restaurant.  Officer Aubuchon and I then rode back to the business, riding through the parking lot from the south around to the front.  GRANVILLE was still inside and Officer Aubuchon thought he to be wearing jeans.  We drove to the front of the business and parked in the parking lot just north, waiting for the person to exit. |
| 9 | |
| 10 | |
| 11 | |
| 12 | 1451 HRS: GRANVILLE exited the business, carrying a food bag.  He picked up the bicycle that was placed near the front door.  At that time, Officer Aubuchon noticed GRANVILLE to be wearing gray striped slacks which was the description given in the call.  As GRANVILLE rode north through the parking lot, Officer Aubuchon asked if he could talk to him.  GRANVILLE looked back at us and continued to ride away from us.  Officer Aubuchon, this time using his PA, asked GRANVILLE if we could speak with him.  GRANVILLE started pedaling faster as he rode up and over the grassy knoll and continued north on Sunrise Bl. |
| 13 | |
| 14 | |
| 15 | |
| 16 | |
| 17 | We then rode our marked police motorcycles over the same grassy knoll and drove north.  I was in front of Officer Aubuchon as he radioed dispatch that we had a person matching the description riding a bicycle away from us.  As I was closing in on GRANVILLE, I could see he was reaching towards his waistband with his right hand as he controlled the handlebars with his left.  I caught up to him as he placed both hands on the handlebars and I ordered him to stop his bicycle.  GRANVILLE continued pedaling faster away.  I positioned my motorcycle as close to the sidewalk as I could and I pushed GRANVILLE in his left shoulder with my right hand.  GRANVILLE rode towards the edge of the sidewalk and off into the field causing him to flip over the handlebars where he came to rest on his stomach. |
| 18 | |
| 19 | |
| 20 | |
| 21 | |
| 22 | |
| 23 | |
| 24 | Officer Aubuchon and I parked in the gas station parking lot and dismounted.  GRANVILLE was now on his feet and trying to retrieve his bicycle from the tangled weeds and grass.  GRANVILLE had his back to us and I could not see his front side or his hands.  We ordered GRANVILLE to get on the ground which he did not comply.  Officer Aubuchon had GRANVILLE at gunpoint as I drew my taser.  I ordered |
| 25 | |
| 26 | |

> GRANVILLE to get on the ground which he did not comply. At that time, I yelled taser, taser, taser to let Officer Aubuchon know I was deploying my taser. I deployed my taser . . . from approximately 10 feet away. GRANVILLE then fell forward onto the ground with his arms under his torso. Officer Aubuchon along with Officer Baldwin then approached GRANVILLE, still ordering him to show his hands. I maintained taser trigger pull due to the fact GRANVILLE would not show his hands and the call had indicated a large firearm was seen in the waistband. Officer Aubuchon handcuffed GRANVILLE without further incident.

According to plaintiff, defendant James used excessive force and that defendant Aubuchon failed to seek medical aid. Plaintiff adds that defendant James failed to call an ambulance. Upon initial statutory screening of the amended complaint, the court found that the amended complaint appears to state a claim against defendants based on the alleged use of excessive force.[1]

## II. STANDARD FOR MOTION TO DISMISS

In considering a motion to dismiss, the court must accept all allegations of material fact in the complaint as true. See Erickson v. Pardus, 551 U.S. 89, 93-94 (2007). The court must also construe the alleged facts in the light most favorable to the plaintiff. See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); see also Hosp. Bldg. Co. v. Rex Hosp. Trustees, 425 U.S. 738, 740 (1976); Barnett v. Centoni, 31 F.3d 813, 816 (9th Cir. 1994) (per curiam). All ambiguities or doubts must also be resolved in the plaintiff's favor. See Jenkins v. McKeithen, 395 U.S. 411, 421 (1969). However, legally conclusory statements, not supported by actual factual allegations, need not be accepted. See Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949-50 (2009). In addition, pro se pleadings are held to a less stringent standard than those drafted by lawyers. See Haines v. Kerner, 404 U.S. 519, 520 (1972).

/ / /

/ / /

---

[1] Plaintiff has not alleged in the amended complaint any serious medical need on the date of this arrest which would give rise to a cognizable claim based on denial of medical treatment.

3

Rule 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Bell Atl. Corp v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). However, in order to survive dismissal for failure to state a claim under Rule 12(b)(6), a complaint must contain more than "a formulaic recitation of the elements of a cause of action;" it must contain factual allegations sufficient "to raise a right to relief above the speculative level." Id. at 555-56. The complaint must contain "enough facts to state a claim to relief that is plausible on its face." Id. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at 1949. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (quoting Twombly, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility for entitlement to relief." Id. (quoting Twombly, 550 U.S. at 557).

In deciding a Rule 12(b)(6) motion, the court generally may not consider materials outside the complaint and pleadings. See Cooper v. Pickett, 137 F.3d 616, 622 (9th Cir. 1998); Branch v. Tunnell, 14 F.3d 449, 453 (9th Cir. 1994). The court may, however, consider: (1) documents whose contents are alleged in or attached to the complaint and whose authenticity no party questions, see Branch, 14 F.3d at 454; (2) documents whose authenticity is not in question, and upon which the complaint necessarily relies, but which are not attached to the complaint, see Lee v. City of Los Angeles, 250 F.3d 668, 688 (9th Cir. 2001); and (3) documents and materials of which the court may take judicial notice, see Barron v. Reich, 13 F.3d 1370, 1377 (9th Cir. 1994).

/ / /

/ / /

Finally, leave to amend must be granted "[u]nless it is absolutely clear that no amendment can cure the defects." Lucas v. Dep't of Corr., 66 F.3d 245, 248 (9th Cir. 1995) (per curiam); see also Lopez v. Smith, 203 F.3d 1122, 1126 (9th Cir. 2000) (en banc).

### III. DISCUSSION

Defendants argue that the amended complaint fails to state a claim against defendant James for excessive force because, on the facts alleged, defendant James' conduct was objectively reasonable. Defendants also argue that defendant James is entitled to qualified immunity. As to defendant Aubuchon, defendants argue that the amended complaint fails to plead any facts to give rise to an excessive force claim. In his opposition, plaintiff argues:

> Defendants James and Aubuchon use of excessive force is shown by not properly calling for an ambulance or seek any medical for the removal of usage of tasers on plaintiff.

Plaintiff adds – for the first time in this litigation – the following allegations:

> Also, by using a pit maneuver (by way of) pushing plaintiff over the handlebars of bicycle which caused plaintiff to flip over and land in some palm trees leafs, unprofessional by their own admittance there is no procedure or training to stop a person on a bicycle. Defendant tasered plaintiff for an untimely amount of time which caused plaintiff to have severe pain in his knees, spinal area, bottom of both feet (needle type of shooting pain), lack of breath (causing plaintiff to use an asthma inhaler) since the time of incident.

Plaintiff also newly alleges that the taser had embedded in his spinal column.

While the court is inclined to agree with defendants that the allegations contained in the amended complaint are insufficient, the new factual allegations set forth in plaintiff's opposition to defendants' motion alter the analysis. Specifically, though plaintiff did not allege any medical needs in the amended complaint, he now alleges that the taser embedded in his spinal column. If true, and construed in the light most favorable to plaintiff, this could constitute a medical need which, if ignored, could give rise to a claim. Further, plaintiff now alleges that his excessive force claim is based on not only being tasered but also on being pushed off his

5

bicycle. Additionally, plaintiff now alleges that he was injured because defendant James tasered him for an "untimely amount of time." Plaintiff should be provided an opportunity to further amend in order to set forth all his factual allegations in a single operative pleading.

## IV.  CONCLUSION

Based on the foregoing, the undersigned recommends that defendants' motion to dismiss be granted and that the first amended complaint be dismissed with leave to amend.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within 14 days after being served with these findings and recommendations, any party may file written objections with the court. Responses to objections shall be filed within 14 days after service of objections. Failure to file objections within the specified time may waive the right to appeal. See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: September 8, 2016

_____
**CRAIG M. KELLISON**
UNITED STATES MAGISTRATE JUDGE