IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM GRANVILLE SMITH, | No. 2:14-CV-0775-KJM-CMK-P |
| Plaintiff, | |
| vs. | FINDINGS AND RECOMMENDATIONS |
| B. AUBUCHON, et al., | |
| Defendants. | |

Plaintiff, a prisoner proceeding pro se, brings this civil rights action pursuant to 42 U.S.C. § 1983. Pending before the court is defendants' unopposed motion to dismiss (Doc. 61).

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

# I. PLAINTIFF'S ALLEGATIONS

This action proceeds on plaintiff's second amended complaint, captioned "Second Amended Complaint as to Genuine Facts of Excessive Force – "Taser Use" (underlining in original). Attached to the amended complaint and incorporated by reference is a "Supplemental Report" prepared by defendant James, a police officer with the Sacramento County Sheriff's Department. The report states:

> 1432 Hrs, 1-4-2011, I, Officer M. James . . . was on patrol when a dispatch call of an armed bank robbery was dispatched from the First Bank located at 2880 Sunrise Bl.
>
> I asked dispatch for the nearest cross street and advised I would be checking the area. Dispatch advised the suspect was a black male adult wearing a gray suit with stripes and armed with a large handgun.
>
> I check the businesses in the surrounding area north of the bank. An officer advised radio dispatch to contract the RT light rail and have them check their cameras. At that time, I drove to the corner of Sunrise Gold Center and Sunrise Bl. and noticed what appeared to be a black male adult, later identified as S-1 William GRANVILLE, standing inside the business at the time. I saw GRANVILLE was wearing an oversize coat and hair pulled back in a pony tail. As I drove north in Sunrise Bl. I also saw a bicycle laying down in front of the business.
>
> I then rode to the RT light rail station to check for the person matching the description. I did not see anyone matching that description. At that time, Officer Aubuchon . . . met up with me and I relayed to him the information regarding the subject inside the restaurant. Officer Aubuchon and I then rode back to the business, riding through the parking lot from the south around to the front. GRANVILLE was still inside and Officer Aubuchon thought he to be wearing jeans. We drove to the front of the business and parked in the parking lot just north, waiting for the person to exit.
>
> 1451 HRS: GRANVILLE exited the business, carrying a food bag. He picked up the bicycle that was placed near the front door. At that time, Officer Aubuchon noticed GRANVILLE to be wearing gray striped slacks which was the description given in the call. As GRANVILLE rode north through the parking lot, Officer Aubuchon asked if he could talk to him. GRANVILLE looked back at us and continued to ride away from us. Officer Aubuchon, this time using his PA, asked GRANVILLE if we could speak with him. GRANVILLE started pedaling faster as he rode up and over the grassy knoll and continued north on Sunrise Bl.
>
> We then rode our marked police motorcycles over the same grassy knoll and drove north. I was in front of Officer Aubuchon as he radioed dispatch that we had a person matching the description riding a bicycle

away from us. As I was closing in on GRANVILLE, I could see he was reaching towards his waistband with his right hand as he controlled the handlebars with his left. I caught up to him as he placed both hands on the handlebars and I ordered him to stop his bicycle. GRANVILLE continued pedaling faster away. I positioned my motorcycle as close to the sidewalk as I could and I pushed GRANVILLE in his left shoulder with my right hand. GRANVILLE rode towards the edge of the sidewalk and off into the field causing him to flip over the handlebars where he came to rest on his stomach.

Officer Aubuchon and I parked in the gas station parking lot and dismounted. GRANVILLE was now on his feet and trying to retrieve his bicycle from the tangled weeds and grass. GRANVILLE had his back to us and I could not see his front side or his hands. We ordered GRANVILLE to get on the ground which he did not comply. Officer Aubuchon had GRANVILLE at gunpoint as I drew my taser. I ordered GRANVILLE to get on the ground which he did not comply. At that timed, I yelled taser, taser, taser to let Officer Aubuchon know I was deploying my taser. I deployed my taser . . . from approximately 10 feet away. GRANVILLE then fell forward onto the ground with his arms under his torso. Officer Aubuchon along with Officer Baldwin then approached GRANVILLE, still ordering him to show his hands. I maintained taser trigger pull due to the fact GRANVILLE would not show his hands and the call had indicated a large firearm was seen in the waistband. Officer Aubuchon handcuffed GRANVILLE without further incident.

It is worth noting that plaintiff was granted leave to file a second amended complaint following this court's denial of defendants' prior motion to dismiss. Specifically, while the court agreed with defendants that plaintiff's first amended complaint failed to state any claims for relief, plaintiff had alleged new facts in opposition to defendants' prior motion warranting leave to amend. The court observed:

> . . . In his opposition, plaintiff argues:
>
> > Defendants James and Aubuchon use of excessive force is shown by not properly call for an ambulance or seek any medical for the removal of usage of tasers on plaintiff.

/ / /

/ / /

/ / /

3

> Plaintiff adds – for the first time in this litigation – the following allegations:
>
>> Also, by using a pit maneuver (by way of) pushing plaintiff over the handlebars of bicycle which caused plaintiff to flip over and land in some palm trees leafs, unprofessional by their own admittance there is no procedure or training to stop a person on a bicycle. Defendant tasered plaintiff for an untimely amount of time which caused plaintiff to have severe pain in his knees, spinal area, bottom of both feet (needle type of shooting pain), lack of breath (causing plaintiff to use an asthma inhaler) since the time of incident.
>
> Plaintiff also newly alleges that the taser had embedded in his spinal column.

Plaintiff has not included any of these allegations in the second amended complaint.

## II. STANDARD FOR MOTION TO DISMISS

In considering a motion to dismiss, the court must accept all allegations of material fact in the complaint as true. See Erickson v. Pardus, 551 U.S. 89, 93-94 (2007). The court must also construe the alleged facts in the light most favorable to the plaintiff. See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); see also Hosp. Bldg. Co. v. Rex Hosp. Trustees, 425 U.S. 738, 740 (1976); Barnett v. Centoni, 31 F.3d 813, 816 (9th Cir. 1994) (per curiam). All ambiguities or doubts must also be resolved in the plaintiff's favor. See Jenkins v. McKeithen, 395 U.S. 411, 421 (1969). However, legally conclusory statements, not supported by actual factual allegations, need not be accepted. See Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949-50 (2009). In addition, pro se pleadings are held to a less stringent standard than those drafted by lawyers. See Haines v. Kerner, 404 U.S. 519, 520 (1972).

Rule 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Bell Atl. Corp v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). However, in order to survive dismissal for

failure to state a claim under Rule 12(b)(6), a complaint must contain more than "a formulaic recitation of the elements of a cause of action;" it must contain factual allegations sufficient "to raise a right to relief above the speculative level." Id. at 555-56. The complaint must contain "enough facts to state a claim to relief that is plausible on its face." Id. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at 1949. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (quoting Twombly, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility for entitlement to relief." Id. (quoting Twombly, 550 U.S. at 557).

In deciding a Rule 12(b)(6) motion, the court generally may not consider materials outside the complaint and pleadings. See Cooper v. Pickett, 137 F.3d 616, 622 (9th Cir. 1998); Branch v. Tunnell, 14 F.3d 449, 453 (9th Cir. 1994). The court may, however, consider: (1) documents whose contents are alleged in or attached to the complaint and whose authenticity no party questions, see Branch, 14 F.3d at 454; (2) documents whose authenticity is not in question, and upon which the complaint necessarily relies, but which are not attached to the complaint, see Lee v. City of Los Angeles, 250 F.3d 668, 688 (9th Cir. 2001); and (3) documents and materials of which the court may take judicial notice, see Barron v. Reich, 13 F.3d 1370, 1377 (9th Cir. 1994).

Finally, leave to amend must be granted "[u]nless it is absolutely clear that no amendment can cure the defects." Lucas v. Dep't of Corr., 66 F.3d 245, 248 (9th Cir. 1995) (per curiam); see also Lopez v. Smith, 203 F.3d 1122, 1126 (9th Cir. 2000) (en banc).

/ / /

/ / /

/ / /

### III. DISCUSSION

Defendants argue that plaintiff's second amended complaint fails to state any cognizable claim for relief. Plaintiff has not filed an opposition.

Plaintiff presents a claim of excessive force under the Fourth Amendment.[1] In Graham v. Connor, 490 U.S. 386 (1989), the Supreme Court held that police officers have "the right to use some degree of physical coercion or threat thereof" to effectuate an arrest. Id. at 396. The use of force must be objectively reasonable under the circumstances when viewing the facts from the perspective of a reasonable police officer on the scene. See id. at 396-97. In this case, the court finds that defendants acted reasonably under the circumstances. Specifically, defendants had reasonable suspicion to detain plaintiff given the description provided by dispatch. Defendants' suspicion was reasonably heightened when plaintiff attempted to evade them on his bicycle. A potential threat to defendants and the public was then presented when plaintiff reached towards the waistband of his pants. At this point, defendant Smith acted reasonably in pushing plaintiff off his bicycle. After plaintiff refused to comply with the officers' orders, defendant Smith acted reasonably in deploying a taser.

///
///
///
///
///
///
///
///

---

[1] While the first amended complaint and plaintiff's opposition to defendants' prior motion to dismiss suggested a claim of deliberate indifference to a serious medical need, plaintiff appears to have abandoned any such claim for relief in the second amended complaint.

## IV. CONCLUSION

Based on the foregoing, the undersigned recommends that defendants' unopposed motion to dismiss (Doc. 61) be granted and that this action be dismissed in its entirety without further leave to amend and with prejudice.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within 14 days after being served with these findings and recommendations, any party may file written objections with the court. Responses to objections shall be filed within 14 days after service of objections. Failure to file objections within the specified time may waive the right to appeal. See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: August 31, 2017

_____
**CRAIG M. KELLISON**
UNITED STATES MAGISTRATE JUDGE